**CITY OF LAMONI, Appellee,**

v.

**Ronald LIVINGSTON, d/b/a Lamoni Wood Co., Appellant.**

**No. 85–259.**

Supreme Court of Iowa.

Aug. 20, 1986.

Robert A. Rolfe of Phipps & Rolfe, Lamoni, for appellant.

David L. Christensen of Wilson, Bonnett & Christensen, Lenox, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, LARSON, and CARTER, JJ.

McGIVERIN, Justice.

Defendant Ronald Livingston obtained from the zoning officer of plaintiff city of Lamoni (city) a building permit and a use permit for the construction of a sawmill on his property. After consulting with the city attorney a few weeks later, the zoning officer determined that the issuance of the permit was in error and revoked it. The city then sought and was granted an injunction against the construction of the sawmill. After trial, defendant appealed from the judgment granting this injunction. Upon consideration of the issues raised, we affirm.

Defendant Livingston lives in the city of Lamoni and has operated a business there

known as the "Lamoni Wood Company" since 1981. The business produces firewood, logs and other wood products. Defendant decided to build a sawmill for his wood business. Because he needed a new building to house the necessary equipment for the operation of the sawmill, defendant applied for a use permit and a building permit from the city in January 1984.

The zoning and building code for the city, adopted in 1973 pursuant to Iowa Code chapter 414, establishes seven separate zoning districts. Lamoni, Iowa, Zoning Ordinance § 4.210 (1973). The land on which defendant's wood business presently is located and which would be the site of the proposed sawmill is zoned as a "Local Industrial District—M-1." Lamoni, Iowa, Zoning Ordinance § 4.215. Permitted uses in this zoning district are as follows:

(1) All uses permitted in R-1 District and not otherwise prohibited (not relevant here);

(2) All uses permitted in B-1 District and not otherwise prohibited (not relevant here);

(3) Bottling works;

(4) Frozen food locker plants;

(5) Milk distributing station;

(6) Carting, express and storage yard;

(7) Contractor's yard;

(8) Coal, coke or lumber yard;

(9) Grain elevator and all related and incidental activities;

(10) Other similar non-manufacturing enterprises.

Lamoni, Iowa, Zoning Ordinance § 4.224. The specifically enumerated enterprises existed in the M-1 district in 1973 and were "grandfathered in" by the adoption of the zoning ordinance.

Believing the sawmill would constitute a "similar non-manufacturing enterprise," defendant sought both a use and a building permit which the city zoning officer issued on January 17, 1984. Lamoni, Iowa, Zoning Ordinance § 4.239. The city did not have a city attorney at the time, so the zoning officer did not seek legal advice on the issuance of the permits. Sometime after receiving the permits, defendant began construction on the new building.

In early February, a group of citizens presented a petition to the city council voicing their objections to the proposed sawmill. Defendant attended that meeting. The council decided to table the issue until a city attorney could be appointed and the sawmill building permit and use permit discussed with the new city attorney. A new city attorney was hired soon after this time. He advised the zoning officer that the sawmill was a non-conforming use for the M-1 district and that the permits should be revoked.

Acting upon the advice of the city attorney, the zoning officer revoked the permits on February 21 on the ground that they violated the zoning ordinance. Lamoni, Iowa, Zoning Ordinance § 4.44. Various attempts were made to serve the notice of revocation on defendant. A written notice of revocation was sent to him by certified mail with return receipt, as provided in the city ordinance. Lamoni, Iowa, Zoning Ordinance §§ 4.44-.45. It was returned because defendant was not there to sign for it, although two written notices of the certified letter were delivered to defendant's residence. In April 1984, a deputy sheriff personally delivered a copy of the notice of revocation to defendant. Defendant claims that this was the first time that he received notice of the action regarding the proposed sawmill. In the meantime, he had begun construction on it.

On April 26, the city commenced this action in equity and was granted a temporary injunction to halt construction of the building. The city also requested a permanent injunction. Iowa R.Civ.P. 320-30. After trial, the district court granted a permanent injunction in January 1985. Defendant appealed from that judgment.

On appeal, defendant contends that: 1) the district court should have found the sawmill was a permitted use under the applicable zoning ordinance; 2) he gained a vested right in the building permit by acting and incurring expense in reliance on it;

3) the city ordinance is discriminatory and denies him equal protection of the laws; and 4) the city is estopped from asserting a violation of its zoning ordinance because the use permit was not expressly revoked.

Our scope of review in this equity action is de novo. Iowa R.App.P. 4. In evaluating each of these claims, we note that this court has repeatedly held that zoning is an exercise of police powers delegated to municipalities by the state, and, thus, the ordinances are to be strictly construed. *See Greenawalt v. Zoning Board of Adjustment*, 345 N.W.2d 537, 545 (Iowa 1984); *Anderson v. City of Cedar Rapids*, 168 N.W.2d 739, 742 (Iowa 1969).

I. *"Non-manufacturing enterprises."* We first consider whether the proposed use of defendant's property is within section 4.224 of the zoning ordinance. Section 4.234 of the city ordinance provides that when "any particular use is not mentioned [in the ordinance], application for a special use permit therefor may be submitted to the Board of Adjustment." Defendant never submitted such an application; therefore, we examine only whether the sawmill constituted a permitted enterprise within the terms of the zoning ordinance. Although it is not specifically listed as a permitted use in section 4.224, we must consider whether the sawmill constitutes a "similar non-manufacturing enterprise" and, thus, is permitted in an M–1 district.

█ The phrase "similar non-manufacturing enterprise" is not defined in the ordinance, and we have not previously considered such a term in the context of zoning or other types of statutes. Plaintiff city contends that a sawmill is an enterprise where logs are cut and shaped into lumber or boards and that these changes in the raw material constitute manufacturing.

This conclusion is supported by decisions from other jurisdictions which have uniformly held that a sawmill does constitute a manufacturing enterprise. *See State v. Grayson Lumber Co.*, 271 Ala. 35, 40, 122 So.2d 126, 130–31 (1960); *Ross v. Greene & Webb Lumber Co.*, 567 S.W.2d 302, 303–04 (Ky.1978); *State ex rel. Browne v. A.W.*

*Wilbert's Sons Lumber & Shingle Co.*, 51 La.Ann. 1223, 1235, 26 So. 106, 110–12 (1899); *Benedict v. Davidson County*, 110 Tenn. 183, 189–90, 67 S.W. 806, 807–08 (1902).

Although we are considering the question of whether a sawmill constitutes a manufacturing enterprise within the meaning of a zoning ordinance and the above authorities were interpreting the term in the context of state taxation statutes, we believe there is no logical reason not to follow those holdings here. We have found no authority to the contrary. Therefore, we conclude that a sawmill is a manufacturing enterprise within the applicable ordinance.

Defendant claims that the other specifically listed permitted uses in the M–1 district such as the grain elevator and the lumber yard create noise and safety hazards, yet these businesses are permitted to operate without interference by the city. Whether or not these allegations are true, the fact remains that these businesses are specifically permitted to operate in the M–1 district by the zoning ordinance. The city has the power to and did adopt a number of techniques to confine certain industries to particular areas of the city. It is fair to infer that a sawmill is not permitted in the M–1 district because it is a manufacturing enterprise which may be presumed to create more noise and other problems than a non-manufacturing enterprise. This type of distinction may be made by a city in order to promote the health and safety of the community. *See* Iowa Code §§ 414.1–.2 (1983).

If the applicable ordinance provided that "similar enterprises" were permitted, we might reach a different result. However, that is not the case. The city has chosen, in the plain language of the ordinance, to make a distinction between manufacturing and non-manufacturing concerns. Because the sawmill is a manufacturing enterprise, the permit was improperly granted to defendant by the city zoning officer.

II. *Vested rights.* At trial, defendant offered evidence that he had expended a substantial sum of money on the strength of his permit. On this basis, defendant urges that he acquired vested rights, and, thus, the permit could not be revoked by the city.

■ Our cases have determined some controlling principles which may provide guidance here. Where a building permit is regularly issued in accordance with the relevant zoning ordinance, it may not be revoked after the permit holder has relied thereon if there is no violation of the applicable ordinance. *Rehmann v. City of Des Moines,* 200 Iowa 286, 292–93, 204 N.W. 267, 270 (1925).

■ On the other hand, where there has been no compliance with or authorization in the ordinance, the deficiency is deemed jurisdictional and reliance will not bar a revocation. In these types of cases, we have held that because the permit was granted wholly without legal authority, there was no power in the zoning officer or board of adjustment to grant it in the first place. *See Arkae Development, Inc. v. Zoning Board of Adjustment,* 312 N.W.2d 574, 578 (Iowa 1981) (reliance during time allowed for appeal of board of adjustment's grant of building permit does not give the holder vested rights); *Grandview Baptist Church v. Zoning Board of Adjustment,* 301 N.W.2d 704, 709 (Iowa 1981) (reliance upon building permit during time allowed for appeal does not prevent board from revoking a properly challenged building permit); *Zimmerman v. O'Meara,* 215 Iowa 1140, 1149, 245 N.W. 715, 719 (1932) (if permit were illegally granted, holder's reliance is no bar to injunction against further construction by board of adjustment).

But, what of the intermediate situation in which the administrative official in good faith and within the ambit of his duty makes an erroneous interpretation of the ordinance and the property owner in good faith relies thereon? This presents a more difficult question. In *Crow v. Board of Adjustment,* 227 Iowa 324, 328, 288 N.W. 145, 147 (1939), a veterinary surgeon made full disclosure to the city of his plans to build a "dog hospital" within his own living quarters in a "hospital" zoned district. His permit was granted. After the building inspector consulted the city attorney, and after the veterinary surgeon had spent considerable money toward constructing the building, the permit was revoked by the board of adjustment on an appeal by property owners objecting to the issuance of the permit. This court held that the word "hospital" can reasonably be given either a broad or narrow definition. Because the building inspector gave it a broad meaning, his issuance of the permit was not clearly in error, nor without basis. Therefore, the permit was valid when it was initially granted and during the time construction work was in progress. The veterinary surgeon acquired the vested right to proceed under his building permit, and we held the board of adjustment acted illegally in revoking the permit.

■ We believe the facts under this record, however, more closely parallel those present in the second category of cases we reviewed, which hold that, when a permit is granted wholly without legal authority, the holder does not gain vested rights in it. The permit issued to defendant was unauthorized and void because a sawmill is not a permissible use in an M–1 zoning district. It is neither specifically listed in section 4.224 of the zoning ordinance, nor is it a "non-manufacturing enterprise." Thus, the zoning officer had no authority to issue the permit to build the sawmill.

Although it is unclear as to the exact point in time at which defendant received notice of the revocation of his building permit, we agree with the district court that defendant was not justified in proceeding with construction on the sawmill and incurring costs in reliance on his permit. He attended the city council meeting on February 6 when the petition in opposition to the sawmill was presented. He received two notices of the certified letter of revocation as well as calls from the zoning officer and the mayor informing him of the revocation.

A notice of revocation was personally delivered to and accepted by defendant's counsel. Finally, notice was personally served on defendant. Yet, during this period, defendant continued to work on the sawmill and did so even after he was personally served with the notice of revocation. Because defendant then did not cease construction, plaintiff brought this injunction action.

In equity cases, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court, but are not bound by them. Iowa R.App.P. 14(f)(7). We agree with the trial court's finding that the record does not show a good faith reliance on the permit which entitles defendant to gain vested rights in it.

For these reasons, we conclude that there is no merit in defendant's claim that he gained a vested right in the permit to build the sawmill.

III. *Constitutional claim.* Defendant next contends that if the city zoning ordinance is construed and applied in such a manner as to exclude his proposed sawmill, the resulting "arbitrary and capricious" application of the ordinance will deny him his constitutional right to equal protection of the laws. U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 6. He also claims that he has been singled out for discriminatory treatment because he is of Indian descent.

■ As we noted before, zoning ordinances are presumed to be a valid exercise of the police power. *Anderson,* 168 N.W.2d at 742. The burden is upon the one asserting the invalidity of an ordinance to prove the proviso unreasonable, arbitrary, capricious or discriminatory. *Hermann v. City of Des Moines,* 250 Iowa 1281, 1285, 97 N.W.2d 893, 895 (1959).

■ The city has a right to confine manufacturing enterprises to certain areas. In division I, above, we noted that the sawmill does not come within the applicable ordinance as a permitted use; therefore, it may not be located in an M–1 district. The

other enterprises, including the grain elevator, are permitted within the express terms of the ordinance because they were "grandfathered in." This does not establish discriminatory treatment, nor does it appear that the ordinance is being applied in an arbitrary and capricious manner.

■ Although defendant alleges that he is being singled out for discriminatory treatment because of his Indian descent, the record does not support this claim. The city validly was applying the zoning ordinance in refusing to allow construction on the sawmill. Defendant has alleged that there are other non-conforming enterprises which are operating in the zoning district in violation of the zoning ordinance. However, there also was evidence offered that defendant's wood business may be in violation of the ordinance and yet it is being allowed to continue to operate. Therefore, we reject defendant's constitutional claim.

IV. *Estoppel.* Finally, defendant contends that the city's issuance of a use permit, which certifies that the property is zoned for the intended use to be made by the applicant, estopped the city from later asserting the invalidity of the building permit. He also claims that the use permit was never revoked.

The facts regarding this claim are not altogether clear. This record shows that the zoning officer noted that both the building permit and the use permit were revoked on February 21, 1984. He also made that notation on the application for building permit but not on the application for occupancy permit. However, regardless of the notations made, an applicant must possess a use permit before the issuance of a building permit. Lamoni, Iowa, Zoning Ordinance § 4.47. Thus, when the building permit was revoked for noncompliance with the zoning ordinance, it would be reasonable to assume that the use permit on which the building permit was based also implicitly was revoked.

■ Further, we note that the doctrine of estoppel is not generally applicable

against a governmental body and, if applied, it is done so only in exceptional circumstances. A municipality is generally not estopped from enforcing its zoning regulations. C. Rhyne, *The Law of Local Government Operations* 864 (1980).

Therefore, we conclude that the city is not estopped from asserting the invalidity of the building permit.

V. *Disposition.* For the foregoing reasons, we conclude that the district court properly enjoined the construction of defendant's sawmill. Thus, the judgment of the district court is affirmed. Defendant's application for appellate attorney fees is denied.

AFFIRMED.

All Justices concur except REYNOLDSON, C.J., who concurs in the result.