CITY OF MARSHALLTOWN,
Iowa, Plaintiff–Appellee,

v.

Rod REYERSON, Defendant–Appellant.

Mel WALDEN and Leslie Walden,
Intervenors–Appellees,

v.

Rod REYERSON and Tenie Reyerson,
Defendants–Appellants.

No. 94–0677.

Court of Appeals of Iowa.

April 28, 1995.

Barry S. Kaplan of Fairall, Fairall, Kaplan, Hoglan, Condon & Klaessy, Marshalltown, for appellants.

Patrick W. Brooks of Brooks & Ward, Marshalltown, for appellee Marshalltown.

John F. Veldey of Cartwright, Druker & Ryden, Marshalltown, for appellees Walden.

Heard by SACKETT, P.J., and HABHAB and HUITINK, JJ.

SACKETT, Judge.

The trial court entered a permanent injunction directing defendant-appellant Rod Reyerson to remove a garage the trial court determined was in violation of city zoning ordinances and did not conform to a special variance plaintiff-appellee the City of Marshalltown, Iowa, had issued to build the garage. Reyerson appeals contending the doctrines of estoppel and laches should prevent the city from obtaining the injunction enforcing the ordinance. Mel Walden and Leslie Walden, owners of property adjoining defendant's garage, have intervened. Waldens contend the trial court should be affirmed but the order should be modified to give them further relief. Waldens have not filed a cross-appeal. We affirm.

This case was tried in equity. We review de novo. Iowa R.App.P. 4.

Rod Reyerson and his wife, Tenie, were interested in purchasing a home and adjacent vacant lot in Marshalltown, Iowa. If Reyersons bought the property, it was their intention to construct a garage or storage building on the vacant lot for the purpose of housing dump trucks and other equipment used in a construction business they own. Before consummating the purchase, Reyerson approached Jay Gsell, the zoning administrator of the City of Marshalltown, and showed him a diagram he had prepared locating the house and the proposed storage building on the two lots. The dimensions of the proposed storage building were not shown on the diagram. Gsell noted on the diagram the zoning was okay and signed and dated the diagram July 7, 1992. Gsell then told Reyerson to see John Jacobs, the City Building Inspector, to see if a building permit could be issued allowing him to build the proposed storage building on the vacant lot.

There is conflicting testimony as to whether Reyersons met with Jacobs before or after they finalized the purchase of the house and lot. We find it unnecessary to resolve this factual dispute. Jacobs testified at trial that he told Reyerson there were zoning problems with the construction of the proposed garage or storage shed. The city's legal department was to subsequently determine Reyerson would need to obtain a variance from the current zoning ordinance before he could obtain a building permit to construct the proposed building.

Reyerson requested a zoning variance. The published notice of the meeting of the Board of Adjustment to consider the proposed variance listed the wrong lot number. No notices were mailed or delivered to the adjoining property owners. On March 30, 1993, the Board of Adjustment granted the requested variance.[1] Waldens have alleged the variance subsequently issued by the Board of Adjustment was void for lack of jurisdiction because of improper service. Waldens did not file a cross-appeal. We do not address the validity of the variance. The city's jurisdiction to issue the variance is not an issue in this appeal.

Reyersons applied for a building permit. The building permit issued on April 26, 1993, specified the building would be forty-two feet by seventy-two feet and fifteen feet from the front lot line and twenty-five feet from the nearest side lot line. Reyersons began construction of the garage in May 1993. The city building inspector approved the footings after they were staked but before they were poured.

The first Waldens were aware of the proposed garage was when they saw excavating equipment on the property. On May 21, 1993, when only the corner posts of the building were in place, Waldens contacted the city officials. On May 24, 1993, Waldens and their neighbors attended a city council meeting to voice concern over the size and location of the building.

This action was commenced and the building was substantially completed.

The trial court found "that the existing storage building violates both the zoning ordinance relating to maximum heights of accessory building and the variance permit concerning the building's setback from the north boundary line of the Reyerson real estate." The trial court found the building twenty-two feet high when the zoning ordinance limits accessory buildings to twenty feet. The Board of Adjustment did not authorize a variance from the height restriction. The trial court also found the front side of the storage building is within 6.2 feet of the north boundary line of Reyerson's lot and thus violates the variance permit requiring the north side of the building to be no closer than fifteen feet from the boundary line.

Reyersons concede the building is in violation of the zoning ordinance and variance permit. They contend they would not have purchased the property if Gsell had not assured them they could construct the garage on the vacant lot. They also contend they submitted a drawing showing the building size, including height, prior to the issuance of the building permit.

1. The City contends its ordinances do not allow the Board of Adjustment to grant a variance of

frontage setback and the Board exceeded its power in doing so.

Reyersons first contend we should apply the doctrine of equitable estoppel to preclude the city from obtaining the injunction. The essential elements of the affirmative defense of equitable estoppel are: (1) a false representation or concealment of material fact by the city, (2) a lack of knowledge of the true facts by Reyersons, (3) the city's intention the representation be acted upon, and (4) reliance upon the representations by Reyersons to their prejudice and injury. *See Incorporated City of Denison v. Clabaugh,* 306 N.W.2d 748, 754 (Iowa 1981). The Reyersons have the burden of establishing each of these essential elements by clear, convincing, and satisfactory evidence. *Anita Valley, Inc. v. Bingley,* 279 N.W.2d 37, 41 (Iowa 1979).

The doctrine of equitable estoppel is applied against a governmental body only under exceptional circumstances. A municipality is generally not estopped from enforcing its zoning regulations. *City of Lamoni v. Livingston,* 392 N.W.2d 506, 512 (Iowa 1986); *see also Cranston v. Saggau,* 526 N.W.2d 338, 341–42 (Iowa App.1994) (fact city issued building permit by mistake did not preclude this court from granting adjoining property owners petition and ordering removal of a porch erected in violation of city ordinance).

We agree that the trial court properly refused to apply the doctrine of equitable estoppel. Reyerson placed the building closer than fifteen feet from the front lot line. The placement was not because he was allowed to do so by the Board of Adjustment but because he did not measure the setback correctly and contends Gsell had told him the city would measure the setback later. Reyerson made no effort to correctly measure the setback. Reyerson was bound to know the ordinance. *See Boardman v. Davis,* 231 Iowa 1227, 1232, 3 N.W.2d 608, 611 (1942). Obtaining a building permit does not grant protection against a city ordinance. *See id.,* 231 Iowa at 1231–32, 3 N.W.2d at 611. We affirm the trial court on this issue.

Reyerson next contends the doctrine of laches is applicable. This doctrine grants relief to a party who has been injured by a delay in the assertion of a claim and has been prejudiced. *See State v. Peterson,* 347 N.W.2d 398, 404 (Iowa 1984). The party seeking to establish laches bears the burden of establishing it by clear, convincing, and satisfactory evidence. *Committee on Professional Ethics and Conduct of the Iowa State Bar Ass'n v. Wunschel,* 461 N.W.2d 840, 846 (Iowa 1990). Reyerson does not contend the city gave him authority to locate the building where it was later placed. While the variance provided the building could be located fifteen feet, not thirty feet from the property line, the building was 8.5 feet from the northwest corner of the front lot line and 6.2 feet from the northeast corner of the front lot line. Also, the building exceeded the height restriction by two feet.

The trial court properly rejected Reyerson's claim of laches.

**AFFIRMED.**

HUITINK, J. concurs.

HABHAB, J., specially concurs.